State *v.* Turner.

## STATE *v.* TURNER.

1. CRIMINAL LAW. *Evidence. Practice.* The Supreme Court will not reverse for the rejection of evidence offered in behalf of the defendant when the general purport of such evidence is not put in the record so its materiality may be judged of.

Case cited: Holmark *v.* Molin, 5 Cold., 482.

2. SAME. *Compromise verdict.* After the jury had returned into court twice, not being agreed, one of the number agreed to a verdict of murder in the second degree, upon the promise of all the jurors to sign a

State *v.* Turner.

petition for pardon to the Governor, this verdict was returned. The juror afterwards stated, upon affidavit, that he did not go contrary to his judgment in rendering the verdict, and he did not agree to it because they agreed to sign the petition: *Held,* not reversible.

3, SAME. *Jury. Proper conduct of.* It is not improper for the jury, when deliberating upon a case to separate in squads and discuss it, nothing else appearing.

FROM CARTER.

From the Circuit Court at Elizabethton.

No record found.

NICHOLSON, C. J., delivered the opinion of the court.

At the March Term, 1872, of the Carter County Circuit Court, Samuel Fair was tried for the murder of George Shell, and at the same time H. T. Turner and T. L. Bowers were tried as aiders and abettors of Fair in the murder. They were all found guilty of murder in the second degree, and a new trial granted. At the July Term, 1872, the venue was changed as to Fair, whose trial was transferred to Sullivan county, and a severance was granted to Bowers. A jury was empanelled for the trial of Turner, who rendered a verdict against him of murder in the second degree as aider and abettor of Fair, and sentenced him to ten years in the penitentiary. A motion for a new trial having been overruled, he has appealed to this court.

1. The first error relied on by defendant is, that the court rejected legal evidence offered in his defense. A witness, Nathanel Powell, was examined by the State, and detailed the particulars of a difficulty which

took place on the 13th of October, 1871, between Samuel Fair and George Shell, while they were engaged in putting in Miller's field. Fair had run Shell out of the field with his knife, and had attempted to cut him as he ran. Witness was asked by defendant's counsel "If he had a conversation that evening (the 13th October) with George Shell at his (George's) house after they separated; asked what George said, and offered to prove that witness advised him not to go to the shucking (which was to come off that night), and what he said in reply. The State objected. Witness stated that he did not convey the conversation to defendant or Fair; the other parties were not present. The Court sustained the objection.

The question propounded by defendant's counsel was proper, but when objected to the court ought to have been informed as to the general purport of the declaration of Shell proposed to be put in proof, and upon the exclusion of the question such general purport should have been put in the record to enable this court to judge of the materiality and competency of such declaration. As it does not appear what declaration Shell made, or whether he made any, we cannot determine either as to their materiality or competency, and cannot presume that such declarations were made as would be material and competent. This is not reversible error: *Holmark* v. *Molin*, 5 Col., 482.

2. It is insisted for defendant that the court erred in charging the jury to the effect "that if two conspire to make an affray against others, and in the

same one kills one of the second party, both are guilty of the homicide." This is scarcely a fair statement of the charge. It was as follows:

"If the proof is that there was a conspiracy between Fair and defendant to make an affray, and to do mischief to the persons of the Shells, and the killing charged was in prosecution of their agreement or conspiracy, and the defendant was present, aiding and assisting therein, he is guilty of the homicide, but of such grade as all the facts and circumstances may determine. But, when several, upon a sudden quarrel, get into a fight, and one kills his antagonist, it is no felony in the other, unless they aid him in the fight with knowledge of his felonious intent."

These propositions are in all respects correct, and subject to no just criticism.

3. It is said that the court erred in not giving a new trial because the verdict was founded on a compromise agreement.

It appears from the affidavit of three of the jurors that after the jury had returned into court twice, not having agreed, one of the number, Jos. Wilson, asked whether, if the jury should agree to a verdict of murder in the second degree, all the jurors would sign a petition to the Governor for his pardon, and a restoration to liberty, and in reply all the jurors agreed that they would do so. Shortly thereafter the jury agreed, and the verdict was returned as found. These jurors do not state that Wilson had not made up his mind that defendant was guilty of murder in the second degree, but that he had not agreed to re-

turn such a verdict. He was examined by the court, and said: "I did not go contrary to my opinion in rendering the verdict. I did not agree to it because they agreed to sign the petition."

It is obvious that this juror, and another who acted with him, were desirous of benefiting the defendant by securing in advance the co-operation of the other jurors in an application for pardon, and that they held back in agreeing to the verdict for this reason, and not because they did not believe it right. The verdict was not, therefore, obnoxious to the objection made on the motion for a new trial.

4. It is argued that the jurors were guilty of misconduct in separating themselves in squads and deliberating thus apart in regard to their verdict.

There is no intimation in the affidavits that there way any tampering with jurors by outsiders, but it appeared that in their deliberations the jurors were not at all times gathered into one compact body, but gathered into small squads, and talked about the case, but always in view of their officer. We see no misconduct in this.

5. It is insisted that the verdict is not supported by the evidence.

The jury came to the conclusion that Fair and Turner conspired together to do great bodily harm to Shell; that in pursuance of this conspiracy Turner brought on the affray by approaching George Shell, who was unarmed and peaceable, and rubbing his left fist in his face, having in it a rock, having in his right hand an open knife, and denouncing him as a coward

for having run from Fair that day. Samuel Shell, the father of George, being present, and supposing that Turner was about to attack his son with the stone, struck Turner with his fist, having in it a stone. Thereupon, immediately, Fair, with his knife, struck George Shell and cut his throat, of which he died in the course of an hour. Fair and Turner were brothers-in-law.

We cannot say that the jury were not warranted by the proof in coming to the conclusion that Fair was guilty of murder in the second degree, and that Turner was present, aiding and assisting him in the perpetration of the offense. Upon the whole case we find no error, and affirm the judgment.